UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Carol Ortega

    v.                                                        Civil No. 18-cv-813-LM

Nancy A. Berryhill, Acting
Commissioner of Social Security

**REPORT AND RECOMMENDATION**

    Carol Ortega seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration denying her application for disability insurance benefits and supplemental social security income benefits.  Ortega moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm.  Those motions are before this magistrate judge for a report and recommendation.  For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), should be affirmed.

**Standard of Review**

    The court's review of a final decision of the Acting Commissioner in a social security case "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v.

Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The court defers to the ALJ's findings of fact as long as they are supported by substantial evidence.  42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not."  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quoting Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003)); Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010) ("Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

## Background

On October 18, 2016, Ortega filed an application for disability insurance benefits and supplemental social security income.  She alleged an amended disability onset date of August 28, 2016.[1]  Ortega alleged a disability due to attention deficit hyperactivity disorder ("ADHD"), memory problems, trust issues, and an aneurysm.

---

[1] Ortega originally alleged an onset date of June 18, 2015.

After Ortega's claim was denied, she requested a hearing in front of an ALJ. On February 21, 2018, the ALJ held a hearing, during which Ortega, who was represented by an attorney, appeared and testified.

On March 15, 2018, the ALJ issued an unfavorable decision. In reaching her decision, the ALJ employed the requisite five-step sequential analysis. See 20 C.F.R. § 404.1520.[2] At the first step, the ALJ determined that Ortega had not engaged in substantial gainful activity since the amended alleged onset date of August 28, 2016.

At the second step, the ALJ found the following severe impairments: ADHD, depression, and anxiety. The ALJ found that Ortega's aneurysm, though medically determined, was not a severe impairment. The ALJ also found that Ortega had hypertension, which was medically determined but non-severe. At the third step, the ALJ found that Ortega's impairments did not meet or medically equal the severity of one of the impairments listed in the Social Security regulations.

At step four, the ALJ considered whether Ortega retained

---

[2] The Social Security Administration promulgated regulations governing eligibility for disability insurance benefits at Part 404 and for supplemental social security income at Part 416. Because the regulations are substantially the same, the court will cite only to the Part 404 regulations. See McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

the residual functional capacity ("RFC") to perform work as defined in 20 C.F.R. § 404.1545.  The ALJ found that Ortega had the RFC to perform "a full range of work at all exertional levels," except that she was limited to "simple tasks performed in two-hour blocks over a typical workday and workweek; occasional superficial interaction with the public; occasional interaction with coworkers and supervisors; and occasional changes in routine and work setting."  Admin. Rec. at 21.  In reaching this conclusion, the ALJ considered the medical evidence in the record, certain medical opinions, and Ortega's statements and testimony.  See id. at 19-25.

In assessing Ortega's RFC, the ALJ gave great weight to the opinion of Michael Schneider, Psy.D, a non-examining reviewing consultant, on the basis of his experience and specialty in mental health.  The ALJ also found that Dr. Schneider's opinion was most consistent with the record.  The ALJ gave "partial weight" to the May 2017 examining opinion of Sandra Vallery, Ph.D, discounting the opinion primarily because it did not contain details about the severity of the limitations it described.

The ALJ gave little weight to the February 2018 opinion of Ortega's treating physician, Patricia Pangan, M.D.  Dr. Pangan opined that Ortega's symptoms would frequently interfere with the concentration and attention required to perform simple work

4

tasks.  Dr. Pangan further opined that Ortega was incapable of performing "low stress" jobs because of "untreated depression," that Ortega was unable to stand or walk for long durations or intervals; and that Ortega was only able to occasionally perform lifting and carrying and rarely able to perform postural changes.  The ALJ concluded that Dr. Pangan assigned limitations based on mental health issues, but that she was not a mental health specialist and her treatment records and notes were inconsistent with the mental health issues indicated in the opinion.

The ALJ also considered Ortega's own statements and testimony.  The ALJ found that, although Ortega's impairments could reasonably be expected to produce the symptoms described at the hearing, Ortega's statements about the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ."  Admin. Rec. at 22.  Accordingly, the ALJ accepted Ortega's statements "only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence."  Id.

Given Ortega's RFC, the ALJ found at step five that Ortega could perform her past work as a laboratory glass washer.  The ALJ therefore concluded that Ortega was not disabled.

On August 8, 2018, the Appeals Council denied Ortega's

request for review, making the ALJ's decision the Acting Commissioner's final decision.  This action followed.

## Discussion

Ortega raises two primary claims in her appeal.  First, she argues that the ALJ erroneously weighed the opinion evidence when formulating her RFC.  Second, she asserts that the ALJ erroneously discounted her testimony about her symptoms and limitations.  As explained below, the ALJ's findings are supported by substantial evidence.

### I.   Weight of Opinions

Ortega argues that the ALJ erred by assigning great weight to Dr. Schneider's opinion while discounting Dr. Vallery's opinion and giving Dr. Pangan's opinion little weight.  "An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record."  Ledoux v. Acting Comm'r, Soc. Sec. Admin., 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).

6

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; § 404.1527(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

### A.   Dr. Schneider

Ortega asserts that Dr. Schneider failed to explain the discrepancy between his conclusion that Ortega was capable of simple work and Dr. Vallery's report that Ortega could not consistently recall information, focus attention on work, or stay on task. The Acting Commissioner contends that the ALJ properly gave great weight to Dr. Schneider's opinion because of his experience and its consistency with the evidence.

The ALJ's decision to give Dr. Schneider's opinion great weight was supported by his experience and his specialty in mental health. Ortega overstates the inconsistency between Dr. Schneider's report and Dr. Vallery's report. Dr. Schneider did not ignore Dr. Vallery's report about Ortega's inconsistent

7

recall, as he recited these elements of her opinion when making his own opinion, which also noted limitations on Ortega's ability to concentrate.  Both Dr. Schneider and Dr. Vallery found that Ortega had sufficient ability to understand and remember information, even if Dr. Vallery also found that Ortega had some memory limitations.

At best, Ortega asks the court to reweigh the evidence in the record, which is beyond the scope of the court's review.  See Applebee v. Berryhill, 744 Fed. App'x 6, at *1 (1st Cir. Nov. 30, 2018).

### B.   Dr. Vallery

Ortega asserts that, in giving Dr. Vallery's opinion only partial weight, the ALJ failed to consider the evidence of memory limitations reported by Dr. Vallery.  Specifically, Dr. Vallery observed during a telephone interview that Ortega had difficulty answering questions because she "[h]ad a hard time remembering things."  Admin. Rec. at 220-21.  Dr. Vallery also reported that Ortega had inconsistent recall.

Contrary to Ortega's argument, the ALJ accounted for Dr. Vallery's opinion by finding that Ortega had a moderate limitation in memory and tailoring Ortega's RFC accordingly.  As the ALJ observed, Dr. Vallery's opinion did not indicate the severity of Ortega's memory limitations to support a restriction

8

in functional capacity.  Furthermore, Dr. Vallery's report supports the ALJ's conclusion that Ortega's memory limitations were not severe enough to render her disabled.  Dr. Vallery found that Ortega had no cognitive impairment and that her memory was adequate even though she did have some memory issues. Further, despite noting that her recall was inconsistent, Dr. Vallery found that Ortega could "use information to perform work activities."  Id. at 378.  Finally, to the extent there are inconsistencies between the RFC finding and Dr. Vallery's opinion, the ALJ was not required to adopt all of Dr. Vallery's findings.  See Dorow v. Berryhill, 303 F. Supp. 3d 167, 169 (D. Mass. 2018) (stating that ALJs are not required to adopt the entire report of a single provider, but rather may piece together the relevant medical facts from the opinions of multiple providers).

Ortega also contends that the ALJ incorrectly cited her ability to watch television when discounting Dr. Vallery's opinion about Ortega's memory or concentration.  Ortega asserts that her ability to watch television does not show how well she was able to focus or recall what she watched.  As the Acting Commissioner responds, however, Ortega testified that she was able to pay attention to a thirty-minute television show. Admin. Rec. at 55.  In any event, Ortega's ability to watch television was not the only activity that the ALJ cited when

9

discounting Dr. Vallery's opinion.  For example, Ortega was able to care for her five young grandchildren for up to four hours at a time, and she testified that she remained "alert" while doing so.[3]

Given all the above, the ALJ's decision to give Dr. Vallery's opinion partial weight is supported by substantial evidence.  Even if Dr. Vallery's report could have supported a different outcome or a more limited RFC, the court cannot second guess the ALJ's findings where they are supported by substantial evidence.  See Applebee, 744 Fed. App'x 6, at *1  ("While the record could arguably support a different conclusion, there is clearly substantial evidence to support the ALJ's findings.  Accordingly, we uphold the ALJ's decision.").

C.   Dr. Pangan

Ortega also argues that the ALJ erred by giving little weight to the opinion of Dr. Pangan, her treating physician.  Dr. Pangan opined that Ortega was unable to perform any work at all due to anxiety and untreated depression.  The Acting Commissioner responds that the ALJ gave good reasons for

---

[3] Ortega also argues that the ALJ mischaracterized Dr. Vallery's notes about her daily activities.  She contends that the notes indicate that Ortega used her telephone as a computer, while the ALJ stated only that she "uses a computer."  Though this issue is inconsequential, the ALJ's characterization is not incorrect:  Ortega uses a computer, which is her phone.

10

discounting Dr. Pangan's opinion.

A treating source's medical opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  When an ALJ does not give controlling weight to the medical opinion of a treating source, she must determine the weight to give that opinion by applying the factors listed in the regulations.  See id. § 404.1527(c)(1)-(6).  An ALJ must give "good reasons" for the weight she gives a treating source's medical opinion.  Id. § 404.1527(c)(2).  "Those reasons must offer a rationale that could be accepted by a reasonable mind."  Bean v. Berryhill, 2019 WL 277592, at *3 (D.N.H. Jan. 22, 2019).  "Where an ALJ provides good reasons for giving little weight to a treating source's opinion, [s]he is not required to expressly address each of the factors set forth in" the regulations.  Id.

The ALJ noted that Dr. Pangan was not a mental health specialist, so her opinion could be discounted on that basis. In addition, the ALJ reviewed Dr. Pangan's treatment notes and found that they were not consistent with her opinion. Substantial evidence supports this finding.  For example, in a May 30, 2017, examination, Dr. Pangan found that Ortega had an appropriate mood and affect, and the relatively unremarkable

11

findings on Dr. Pangan's psychiatric exam were inconsistent with the limitations set forth in Dr. Pangan's opinion. Admin. Rec. at 413, 417, 420-421. Therefore, good reasons support the ALJ's decision to give Dr. Pangan's opinion little weight.

Ortega also contends that the ALJ failed to consider Dr. Pangan's report about how her mental limitations were exacerbated by her aneurysm. She argues that pain from her aneurysm frequently interfered with her ability to sustain attention and concentration on simple work activities. Contrary to Ortega's argument, although the aneurysm is noted, Dr. Pangan's opinion does not identify pain resulting from the aneurysm as a cause of Ortega's limitations.

Ortega adds that she is unable to take medication for her ADHD because it interferes with the medication for hypertension. But, in her opinion, Dr. Pangan does not mention a conflict between Ortega's ADHD medication and her hypertension medication.

Treatment notes do not support Ortega's argument. Treatment notes from May and June 2016 indicate that Ortega was unable to take Adderall for her ADHD while taking blood pressure medication. At the time, Ortega told her treating physician that "without the Adderall she can't get anything accomplished. Her house is a mess. Does poorly at work. Unable to focus. Unable to organize." Id. at 439. On June 15, 2016, however, it

is stated in the treatment notes that "Adderall added back last month once [blood pressure] controlled on current regimen." Id. at 435. On October 6, 2016, a treatment note from Dr. Pangan stated that Ortega "[h]as been on [A]dderall for years." Id. at 430. During the May 30, 2017, examination, Dr. Pangan noted that Ortega asked whether she could increase her Adderall in order to suppress her appetite as she had been gaining weight. Dr. Pangan told Ortega that Adderall is not to be used as an appetite suppressant. Id. at 420. On November 27, 2017, Dr. Pangan noted that Ortega "has no difficulty taking her current medication." Finally, Ortega testified that she was able to maintain both medications after fine-tuning the dosages.

## II. Ortega's Subjective Complaints and Symptoms

Ortega argues that the ALJ erred by discounting her own description of her limitations. In examining Ortega's subjective complaints, the ALJ discussed Ortega's testimony that she had difficulty with memory, concentration, understanding, and focus, as well as problems with completing tasks and following instructions, disorganization, difficulty managing stress, and fatigue. The ALJ found that the medically determinable impairments could reasonably be expected to produce the alleged symptoms, but found that Ortega's statements about their severity were not consistent with the record.

Ortega argues – in conclusory fashion – that the ALJ contravened Social Security Ruling ("SSR") 16-3p's instruction that an ALJ "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  SSR 16-3p, 82 Fed. Reg. at 49465.  "[U]nder SSR 16-3p, which supersedes SSR 96-7p, an ALJ determining whether an applicant has a residual functional capacity that precludes a finding of disability must 'evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities.'"  Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018) (quoting SSR 16-3p, 82 Fed. Reg. at 49464). "Moreover, SSR 16-3p provides that, in conducting that inquiry, the ALJ must 'examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'"  Id. (quoting SSR 16-3p, 82 Fed. Reg. at 49464).  Here, the ALJ, examined the record in its totality, and, in making her findings, she cited not only the objective medical evidence, but

14

the medical opinions and Ortega's own reports of her daily activities.

Ortega contends that the ALJ failed to consider the decline in her condition following her aneurysm, and she argues that the ALJ therefore erred by referencing the "conservative" nature of Ortega's treatment history and "unremarkable" medical records as to her mental health. There was, however, no significant change in Ortega's post-aneurysm treatment history. The consistency of Ortega's treatment for her mental health issues – even subsequent to her aneurysm – therefore provides substantial evidence for the ALJ's conclusion that Ortega's symptoms were not as significant as alleged.

Furthermore, although she testified to headaches and head pain after a 2015 surgery for the aneurysm and reported the pain to the examining doctors, Ortega showed no changes in her daily routine or activities after her aneurysm. See Admin. Rec. at 46-47, 375. In her motion to reverse, Ortega claims that the decline in her condition resulted "in her loss of two subsequent jobs in a fairly short period of time leading up to" the amended alleged onset date. Doc. 9-1 at 10. This argument is not supported by the record, which shows that Ortega quit one job preceding the alleged onset date due to a disagreement with a supervisor and was terminated from another based on a fabricated accusation. Admin. Rec. at 20, 48, 210.

15

Finally, despite Ortega's protestations to the contrary, the ALJ did not completely disregard Ortega's testimony about limitations in her concentration and memory.  Rather, the ALJ found that Ortega had a "moderate" limitation in both remembering and concentration.  Given these limitations, the ALJ tailored an RFC that limited Ortega to simple tasks performed in two-hour blocks.  Although disparities existed between Ortega's testimony, the medical opinions, and the other evidence, the ALJ was within her discretion here to resolve the conflicts against Ortega.  See Quaglia v. Colvin, 52 F. Supp. 3d 323, 334, 337 (D. Mass. 2014).  Substantial evidence supports the ALJ's findings.

## Conclusion

For the foregoing reasons, it is recommended that the district judge deny the motion to reverse (doc. no. 9) and grant the Acting Commissioner's motion to affirm (doc. no. 11).

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The 14-day period may be extended upon motion.  Failure to file a specific written objection to the Report and Recommendation within the specified time frame waives the right to appeal the district court's order.  See Santos-

Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

*[signature]*
Andrea K. Johnstone
United States Magistrate Judge

July 18, 2019

cc: Counsel of Record

17